JAYME C. LONG (Bar No. 202867)
jayme.long@dentons.com
STEPHANIE PEATMAN (Bar No. 299577)
stephanie.peatman@dentons.com
DENTONS US LLP
601 South Figueroa Street, Suite 2500
Los Angeles, CA 90017
Tel: (213) 623-9300 / Fax: (213) 623-9924

CHRISTOPHER M. WEIMER (Texas Bar No. 24061894)
*(Pro Hac Vice)*
cweimer@pirkeybarber.com
PIRKEY BARBER PLLC
1801 East 6th Street, Suite 300
Austin, TX 78702
Tel: (512) 322-5200 / Fax: (512) 322-5201

Attorneys for Plaintiff
3M COMPANY

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

| | |
|---|---|
| 3M COMPANY,<br><br>　　　　Plaintiff,<br><br>　　vs.<br><br>THE PERFECT PART INC.<br><br>ADAM ZINKER,<br><br>CORY ZINKER.<br><br>　　　　Defendants. | Case No. 2:20-cv-10540-JVS (JEMx)<br><br>**PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR A PRELIMINARY INJUNCTION**<br><br>Judge: Hon. James V. Selna<br>Hearing Date: Dec. 9, 2020<br>Time: 9:00 a.m. |

1   Defendants do not meaningfully contest that 3M is entitled to a preliminary
2 injunction enjoining Defendants from selling products bearing 3M Marks in their
3 Opposition to 3M's Motion for a Preliminary Injunction. *See* Dkt. 50. Instead,
4 Defendants focus their arguments on the limited and lawful asset freeze this Court
5 entered, and their alleged (and for purposes of this Motion, irrelevant) good faith in
6 selling counterfeit goods. *See id.* Because 3M has met its burden of establishing that
7 a preliminary injunction should issue, and because Defendants have not presented
8 any relevant evidence or arguments to the contrary, this Court should grant 3M's
9 Motion for a Preliminary Injunction.

10  **I.   LEGAL ANALYSIS**

11  3M has established all four elements necessary to entitle it to a preliminary
12 injunction enjoining Defendants from selling products bearing 3M Marks. *See* Dkt.
13 40; *see also Winter v. Natural Res. Defense Council, Inc.*, 555 U.S. 7, 20 (2008)
14 (holding a preliminary injunction is appropriate when the movant establishes: (1) a
15 likelihood of success on the merits; (2) irreparable harm in the absence of the
16 requested relief; (3) the balance of the hardship tipping in its favor; and (4) that its
17 request is in the public interest).

18  **A.   3M is Likely to Succeed on the Merits**

19  Defendants have essentially conceded that 3M is likely to succeed on the
20 merits. They devote only one sentence to the merits in their Opposition brief, in
21 which they deny that they sold counterfeit goods. *See* Dkt. 50, p. 5. Defendants cite
22 no evidence in support of this conclusion, nor could they. 3M has thoroughly
23 analyzed the 3M-branded respirators offered for sale by Defendants and has
24 identified numerous markers demonstrating that Defendants have sold some
25 products that are indisputably counterfeit. *See* Dkt. 40-1 (Gannon Decl. in Support
26 of TRO) ¶¶ 21-23. Additionally, the SGS report that Defendants submitted with their
27 Opposition brief does not prove authenticity, but instead provides a detailed visual
28 inspection of what is a counterfeit 3M product, further confirming that Defendants

sold counterfeit goods. *See* Declaration of Michael Gannon ¶ 4–5. Defendants claim they believed the products they were selling to be genuine, but Defendants' alleged good faith[1] does not change the fact that they sold counterfeit 3M products and are liable for doing so. *See* 15 U.S.C. § 1114.

Because 3M has established that Defendants offered counterfeit products bearing 3M's famous and registered trademarks, and Defendants have presented no evidence to the contrary, 3M is likely to succeed on the merits of its claims. *See generally* Dkt. 40 at p. 14-19; *see also Phillip Morris USA Inc. v. Shalabi*, 352 F.Supp.2d 1067, 1073 (C.D. Cal. 2004) ("Likelihood of confusion is a factual determination normally made using an eight factor test. However, in cases involving counterfeit marks, it is unnecessary to perform the step-by-step examination ... because counterfeit marks are inherently confusing.") (internal citations omitted).

### B. 3M Will Suffer Irreparable Harm

3M has established, and Defendants do not contest, that Defendants' sale of counterfeit 3M products that may endanger the public health is likely to cause 3M and the public irreparable harm. *See* Dkt. 40, p.19-20. Instead, Defendants argue that 3M will not be harmed because Defendants ceased their infringement ***after*** 3M filed its Motion for a Temporary Restraining Order. *See* Dkt. 50, p.5.

However, "[t]he fact that illegal conduct has ceased does not foreclose injunctive relief." *See S.E.C. v. Koracorp Indus., Inc.*, 575 F.2d 692, 698 (9th Cir. 1978). Instead, *"*an inference arises from illegal past conduct that future violations

---

[1] Although Defendants' alleged good faith is irrelevant for the purposes of this Motion, there is evidence suggesting that Defendants did not act in good faith, or at the very least, acted with willful blindness regarding the origin of the goods they were selling. For example, there were obvious and "major" defects with the counterfeit product included in the SGS report. *See* Dkt. 50-1, p. 9. Further, the SGS report explicitly notes that it only inspects the products for workmanship (*id.* at p. 7) not authenticity, so Defendants' reliance on this report as evidence of authenticity is, at a minimum, misplaced. Additionally, Defendants sold both genuine and counterfeit 3M products at highly inflated prices. *See* Dkt. 40-1 (Gannon Decl.) ¶¶ 25-26. Defendants' decision to price gouge consumers during a pandemic, which Defendants fail to even mention or contest in their Opposition brief, serves as further evidence of bad faith.

may occur." *See id.; see also See William R. Warner & Co. v. Eli Lilly & Co.*, 265 U.S. 526, 532 (1924) (holding that a trademark plaintiff "is entitled to effective relief; and any doubt in respect of the extent thereof must be resolved in its favor as the innocent produce and against the [defendant], which has shown by its conduct that it is not to be trusted").

Where a defendant only ceases infringing after a lawsuit is filed, there is no requirement that the plaintiff "introduce concrete evidence that the defendants are likely to infringe again" in order to justify the issuance of an injunction. *See Polo Fashions, Inc. v. Dick Bruhn, Inc.*, 793 F.2d 1132, 1135 (9th Cir. 1986) (reversing denial of injunctive relief in case where cessation of infringement occurred after lawsuit was filed); *see also Brighton Collectibles, Inc. v. Marc Chantal USA, Inc.*, No. 06-CV-1584 H (POR), 2009 WL 10674087, at * (S.D. Cal. May 11, 2009) (issuing injunction despite the fact that defendants had ceased selling infringing products).

Although 3M need not provide concrete evidence that defendants may infringe again, such evidence does exist in this case. As of November 13, 2020, Defendants' online listings for 3M products reflected that Defendants still had inventory of 3M products remaining. *See* Dkt. 40-1 (Gannon Decl.) Exs. 7-1—7-4 (showing "more than 10 available" of each product). Given this remaining inventory and the ease with which these products can be posted online for sale,[2] Defendants could almost instantaneously begin offering infringing 3M products again should an injunction not remain in effect. As of the date of this filing, eBay listings from Defendants' storefront shows they are also still selling non-3M respirators and face coverings through eBay, suggesting that they intend to remain in the business. Declaration of M. Gannon ¶3.

---

[2] By Defendants own admission, they entered the business of selling masks very quickly in April 2020, despite no prior experience selling personal protective equipment. *See* Dkt. 50-1 (Declaration of Adam Zinker) ¶¶ 7-13.

Given this evidence and Defendants' past actions, including offering counterfeit products that are likely to endanger the public, and charging consumers more than six times 3M's list prices for its genuine masks, there is reason to disbelieve Defendants' claim that they will not infringe again. And, as the Ninth Circuit has recognized, "[i]f the defendants sincerely intend not to infringe, the injunction harms them little; if they do, it gives [plaintiff] substantial protection of its trademark." *Polo Fashions*, 793 F.2d at 1135. Particularly in this case, where the sale of even a single counterfeit product could cause serious illness or death to the consumer, this factor weighs in favor of the issuance of a preliminary injunction.

    **C.**    **The Balance of the Equities Weighs in Favor of 3M**

Defendants claim that the equities weigh in their favor because "a preliminary injunction . . . would cripple and end PERFECT PART's business." *See* Dkt. 50, p. 6. But by Defendants' own admission just a sentence earlier, the "3M Masks that PERFECT PART sold on its eBay store make up 0.16% of PERFECT PART's items." *Id.* Given this, an injunction prohibiting Defendants from selling products bearing the 3M Marks would certainly not cripple or end Defendants' business, 99.84% of which could continue to operate.

Defendants also suggest that because they were allegedly acting in good faith when they sold counterfeit products, that somehow negates the harm suffered by 3M through the sale of such products. *See id.* In reality, 3M and the public are harmed by the sale of counterfeit 3M products and 3M products sold at inflated prices, regardless of Defendants' state of mind. *See* Dkt. 40, p. 21. In contrast, Defendants will simply need to cease selling 3M products – products that Defendants admit are outside of their ordinary course of business. Dkt. 50-1, ¶¶ 7-11.

The only harm that Defendants identify comes not from an injunction enjoining them from offering products bearing 3M Marks, but from the limited freeze on the assets in their eBay account. *See generally* Dkt. 50. According to Defendants, this asset freeze is inappropriate because none of the assets in the eBay

account are directly tied to sales of 3M products, and because they will be unable to pay shipping costs and their payroll on December 11. *Id.* Defendants cite no legal authority in support of their argument that this Court's limited asset freeze was inappropriate.

Contrary to Defendants' unsupported claims, there is no requirement that 3M "identify the 'particular property' derived from the defendants' allegedly unlawful activities" at the preliminary injunction stage. *Gucci Am., Inc. v. Weixing Li,* 768 F.3d 122, 133 (2d Cir. 2014) ("We know of no requirement, however, and certainly there is none in the Lanham Act, that would obligate plaintiffs to make this identification prior to obtaining a preliminary injunction."); *see also Cisco Systems, Inc. v. Shenzhen Usource Tech. Co.*, No. 5:20-cv-047773-EJD, 2020 WL 5199434, *11 (N.D. Cali. Aug. 17, 2020) ("The Court's authority is not limited to freezing specific identified assets . . . ."). Instead, the Court can lawfully freeze Defendants' assets, even without such identification, in order to "secure the availability of [plaintiff's] right to an accounting of [defendant's] profits." *Reebok Intern., Ltd. V. Marnatech Enters., Inc.*, 970 F.2d 552, 561 (9th Cir. 1992).

Here, 3M did not seek to freeze all of Defendants' accounts, but only those directly associated with the means of Defendants' infringement (the eBay account). These types of limited freezes have been upheld in similar cases. *See id.; see also Gucci Am., Inc. v. Weixing Li*, 768 F.3d 122, 132–33 (2d Cir. 2014) (confirming trial court could issue TRO and preliminary injunction freezing assets of defendants alleged to be selling counterfeit goods online); *Animale Grp. Inc. v. Sunny's Perfume Inc.*, 256 F. App'x 707, 709 (5th Cir. 2007) (affirming TRO and preliminary injunction freezing assets of defendants selling counterfeit goods).

Defendants fail to explain why they do not have assets in other accounts that could address their payroll and shipping concerns, particularly considering that they

claim the revenues they made from the sales of products bearing 3M Marks are not in their eBay account at all.[3]

Regardless, even though this Court's asset freeze was appropriate, 3M has taken steps to alleviate Defendants' concerns regarding the asset freeze. In particular, before Defendants' filed their Opposition brief, 3M had already agreed to consent to modifying the restraints placed on Defendants' accounts as a result of the TRO to allow Defendants to make payments for ordinary business expenses and fund payroll, restraining only an amount equal to Defendants' profits on the sale of 3M products. *See* Weimer Decl., ¶¶ 3–7, which fact Defendants have failed to note in their Opposition 3M remains willing to modify the TRO and any injunction this Court may enter to limit a restraint on assets to amounts Defendants certify as being tied to their profits from the sale of 3M-branded respirators, a remedy supported by law and well within this Court's equitable powers. Consequently, the only alleged harm that Defendants identify with this Court's lawful asset freeze is one that 3M has already voluntarily agreed to address (well in advance of Defendants' claimed payroll date of December 11).

Given the lawful nature of the limited asset freeze, 3M's efforts to ease any alleged burden Defendants claim they will suffer, and the strong irreparable harm that 3M and the public will face if Defendants are not enjoined from selling 3M products, the balance of the equities weighs in favor of issuing a preliminary injunction.

**D.     The Public Interest Weighs in Favor of a Preliminary Injunction**

There is no question that the public interest weighs in favor a preliminary injunction. Dkt. 40, p. 21. A preliminary injunction will ensure that the public does not unknowingly purchase a counterfeit 3M product that could potentially cause

---

[3] As just one example, Defendants appear to have made at least **$137,850** in sales from the sale of alleged 3M 1860 N95 NIOSH respirators, just one of eight models Defendants have offered. *See* Dkt. 40-1 (Gannon Decl.), Ex. 7-1 (showing that as of November 13, Defendants had sold 919 20-packs of this respirator at a price of approximately $150 per pack, which is approximately $137,850 in sales).

serious illness or death. *Id*. It also protects the public from paying highly inflated prices for 3M products during a global pandemic. *Id.* As discussed above, the mere fact that Defendants claim to have ceased offering counterfeit products does not negate the fact that the public interest weighs against such an offering, which Defendants could easily resume with the inventory that appears to be remaining.

Defendants claim that an injunction will prevent them from providing quality goods to consumers. *See* Dkt. 50, p. 6-7. However, as discussed above, an injunction enjoining Defendants' from offering products bearing 3M Marks, by Defendants' own admission, will not impact 99.84% of Defendants' business. *See id.*, p. 6. Similarly, a limited asset freeze of an amount equal to Defendants' profits from its infringing sales (which Defendants claim to be minimal) will not prevent Defendants from operating their business. As such, the harms posed to the public if an injunction does not issue far exceed the harms posed to Defendants by such an injunction.

## II. **CONCLUSION**

3M has met its burden to prove that it is entitled to a preliminary injunction enjoining Defendants from selling any products bearing 3M Marks, and from transferring assets equal to its gross profits from the sale of 3M products. Because 3M has shown itself entitled to the relief sought, 3M requests this Court grant its Motion for a preliminary injunction.

| | |
|---|---|
| Dated: December 7, 2020 | Respectfully submitted, |
| | DENTONS US LLP<br>Jayme C. Long<br>Stephanie Peatman |
| | PIRKEY BARBER PLLC<br>Christopher M. Weimer |
| | By: /s/ Christopher M. Weimer<br>        Christopher M. Weimer |
| | Attorneys for Plaintiff<br>**3M COMPANY** |

## CERTIFICATE OF SERVICE

I hereby certify that on December 7, 2020, the foregoing Reply was filed via ECF effecting service on counsel for Defendants:

> Parag L. Amin (Bar No. 281133)
> Email : parag@lawpla.com
> Law Office of Parag L. Amin, P.C.
> 5901 W. Century Blvd., Suite 1518
> Los Angeles, CA 90045
> Office: (213) 293-7881 | Fax: (213) 986-3563
>
> Attorney for Defendants
> THE PERFECT PART, INC.
> ADAM ZINKER
> CORY ZINKER
>
> */s/ Christopher M. Weimer*
>     Christopher M. Weimer